UNITED STATES of America,
Plaintiff–Appellee,

v.

Gayle SCHREIER and Irwin Schreier,
Defendants–Appellants.

Nos. 89–5126, 89–5127.

United States Court of Appeals,
Tenth Circuit.

July 13, 1990.

David J. Richman (Mark A. Pottinger, with him on the brief), of Coghill & Goodspeed, Denver, Colo., for defendants-appellants.

Gordon B. Cecil (Tony M. Graham, U.S. Atty., and Ron Wallace, Asst. U.S. Atty., on the brief), Tulsa, Okl., for plaintiff-appellee.

Before LOGAN and BALDOCK, Circuit Judges, and DUMBAULD,* District Judge.

LOGAN, Circuit Judge.

In this direct criminal appeal the only issue is whether defendants Gayle Schreier and Irwin Schreier could have been properly convicted of twenty-six counts of wire fraud in violation of 18 U.S.C. § 1343.[1]

The Schreiers' conduct involved manipulation of the American Airlines Frequent Flyer AAdvantage Program (AAdvantage). Gayle Schreier, who worked in a travel service office, had access to American Airlines' (American) computer reservation sys-tem, which stores passengers' names and flight information. On a number of occasions, Gayle accessed the system to replace the name of actual passengers who had made particular flights with that of G. Johnson, a fictitious person whom Gayle had enrolled as a member of AAdvantage. Schreier also added the AAdvantage account number assigned to G. Johnson by American. The fictitious G. Johnson, therefore, received mileage credits in exchange for which American would issue coupons that could be used to acquire, without any cash payment, tickets for American flights. The record does not reflect whether the actual passengers, whose names were replaced in the airline computer, were members of AAdvantage. The passengers had not, however, requested that the mileage be credited to their AAdvantage accounts, if they were members, by submitting their account numbers to the airline.

Evidence was presented that coupons were issued in exchange for mileage credited to G. Johnson. The coupons were exchanged for tickets and those tickets were used, although no evidence was presented linking the Schreiers to the issuance or use of the tickets.

Irwin Schreier's participation, by circumstantial evidence, was apparently based on his knowledge of Gayle Schreier's actions and his having set up a number of mail drops, the addresses of which were provided to American as the addresses of fictitious AAdvantage members such as G. Johnson.

The appeal turns on the Schreiers' assertion that the government's proof is fatally flawed because it did not show that the Schreiers acquired property of American; rather, if they acquired property of anyone it was of the real passengers, and the government provided no proof of any com-

---

\* The Honorable Edward Dumbauld, Senior United States District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Following trial but before sentencing defendants and the government reached an agreement dismissing all but three counts of fraud, two involving Gayle Schreier and one involving Irwin Schreier, which agreement also restricted the appeal of the issues and mandated that the Schreiers would not seek remand or retrial. Thus, the case presents us with a single issue, requesting that we either affirm the entire appeal or direct a judgment of acquittal.

plaint by any of those passengers. Defendants assert that American had no property interest in the mileage because, as a property interest, it did not exist until claimed by a member passenger; that in American's hands, the mileage is a nullity, rights and duties associated with property do not arise until an AAdvantage member requests credit for the mileage flown. The Schreiers assert that the fact that the actual passengers had not claimed the mileage prior to flying did not foreclose them from eventually claiming it, because a non-member passenger could enroll in AAdvantage within twenty-four hours after the flight and claim mileage credit in the program.[2] In addition, a member passenger who had neglected to provide American with his AAdvantage account number before the flight could provide that information by phone or mail after the flight and be credited with the mileage flown. Thus, argue the Schreiers, the "mileage" belonged to the passengers at least until the expiration of their twenty-four hour claim period. We do not agree.

Mileage credited to AAdvantage members is considered a liability of the airline for accounting purposes. Because of American's policy allowing retroactive award of mileage, when a nonmember buys a ticket the airline acknowledges potential liability for mileage to this ticketholder. That liability comes into existence only if the ticketholder becomes a member of the AAdvantage program and requests that the mileage be credited to his account. The potential liability evaporates without consequences upon the expiration of the post-flight claim period if the passenger has not enrolled in the program and claimed the mileage.

The Schreiers' scheme involved the accumulation of mileage for which American would not otherwise be liable because it was not claimed by the passengers who actually flew. When liability is created on American's books, through a transfer of mileage from nonmember passengers to members, the victim is American, because that corporation thereby owes a liability that otherwise would not exist. By their device of replacing nonmember passengers' names in the computer with a fictional name and account number, the Schreiers have victimized American, by fraud, and through use of computer access, wire fraud.[3] The wire fraud here is not essentially different from that in *United States v. Giovengo*, 637 F.2d 941 (3d Cir.1980), where airline ticket agents used their access to computer generated tickets to collect from cash paying customers, pocket the money, returning to the airline as void the tickets the customers bought.

We have examined the indictment; it is consistent with our analysis and is not fatally defective. In acquiring mileage the Schreiers created liability for the airline, and obtained property for themselves. The Supreme Court has recognized that the taking of intangible property may be the basis of a wire fraud charge. *See Carpenter v. United States*, 484 U.S. 19, 25, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987). We need not pursue a metaphysical argument regarding whether the "property" existed as such in the possession of American to conclude that the creation of a liability on the part of a corporation is no less the misappropriation of its property than would be the theft of an asset worth an equal amount.

---

2. There was disputed evidence regarding whether mileage would be retroactively awarded even if the passenger joined within the twenty-four hour period. At least one airline employee indicated that the retroactive award of mileage is contrary to the rules of the AAdvantage program. However, all witnesses who were actually involved in the enrollment of AAdvantage members or the crediting of AAdvantage accounts testified that credit for just completed flights would be given to a newly enrolled member. For purposes of this opinion we assume American would honor credits retroactively. It

makes no difference to our conclusion either way.

3. In their brief on appeal, the Schreiers challenge the jury instruction on wire fraud, arguing that its failure to specify a victim conflicts with our en banc decision in *United States v. Shelton*, 848 F.2d 1485, 1496 (10th Cir.1988). The defendants failed to object to this instruction at trial. Therefore, in the absence of plain error, the error is not preserved for appeal. *Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1455–56 (10th Cir.1990); Fed.R.Crim.P. 30.

In attempting to refute the Schreiers' contentions on appeal, the government concedes too much, perhaps, by acknowledging that mileage pooling, which included booking American flights in the name of a fictitious person enrolled as a member of the AAdvantage program, when the miles are actually flown by a nonmember, is not a crime. But that concession is not fatal to its case. The issue is whether entering the computer and appropriating asserted "mileage" that, without the fraud, never would become a liability of American, is a crime.

AFFIRMED.

DUMBAULD, Senior District Judge, concurring.

The statute for violation of which defendants-appellants stand convicted (wire fraud under 18 U.S.C. § 1343) requires a scheme "for obtaining money or property" by false representations. The statute does not require that a *defendant* get the property. It is enough if *someone* or *anyone* obtains property pursuant to the fraudulent scheme "devised" by defendant. Tickets issued pursuant to the scheme of defendants-appellants in the case at bar which are usable or used for air travel, I am persuaded, are property. And defendants-appellants utilized wire transmission "for the purpose of executing such scheme."

As stated in Judge Logan's excellent opinion

Evidence was introduced that coupons were issued for mileage credited to G. Johnson [a fictitious name furnished to the airline by defendants-appellants]. The coupons were exchanged for tickets and those tickets were used, although no evidence was presented linking the Schreiers [the defendants-appellants] to the issuance or use of the tickets.

Upon these facts, [and assuming that the indictment suffices under *Stirone v. U.S.*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) ], a violation of the statute has been established.

Accordingly, I join in the judgment of affirmance and in the majority opinion. I write separately merely to disavow explicitly the Government's contention, accepted by the District Court, that the "miles" traveled by some passenger and utilized by someone else to obtain a free ticket good for air travel constitute "property" and property of American Airlines. (If a mere number manipulable in a computer is property at all, it would be property of the passenger who earned it under the airline's promotional plan, not of the airline itself). Noncompliance with that plan is pertinent in proving the *fraudulent representation* element of the offence, not the element of obtaining *property*.

A judgment can properly be affirmed for reasons other than those given by the District Court. *Lindsey v. Dayton–Hudson Corp*, 592 F.2d 1118, 1124 (10th Cir.), *cert. denied*, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979).