**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brenton Neil MULLINS, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Phillip Ross RINKER, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Robert WINKLEMAN,**
**Defendant–Appellant.**

Nos. 91–50107 to 91–50109.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1992.

Memorandum Filed Jan. 8, 1993.

Order and Opinion April 20, 1993.

Certiorari Denied June 21, 1993.

See 113 S.Ct. 2997.

Devan M. Mullins, Stockton, CA, for defendant-appellant Mullins.

Sheldon T. Zenner, Katten, Muchin & Zavis, Chicago, IL, for defendant-appellant Rinker.

Fred D. Heather and Judy Clarke, McKenna & Cuneo, San Diego, CA, for defendant-appellant Winkleman.

Gary Lincenberg, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before FARRIS, LEAVY, and TROTT, Circuit Judges.

## ORDER

The memorandum disposition filed January 8, 1993, is redesignated as an authored opinion by Judge Leavy.

## OPINION

LEAVY, Circuit Judge:

Three travel agents were convicted by a jury of mail and wire fraud arising out of their conspiracy to defraud an airline by electronically transferring frequent flyer miles to fictitious accounts and then cashing in those accounts for free airline tickets. On appeal the three agents argue, *inter alia,* that (1) the district court improperly excluded evidence showing that they did not deprive the airline of anything of value and therefore did not commit mail and wire fraud; (2) the evidence was insufficient to support the convictions; (3) the government used false and misleading evidence; and (4) the district court erred by (a) substituting an alternate juror during deliberations, (b) ad-

mitting into evidence electronically intercepted communications in violation of the Fourth Amendment, (c) calculating the amount of loss suffered by the airline, (d) enhancing two of the sentences based on the agents' roles in the scheme, and (e) failing to reduce the sentences on the grounds of the agents' minor or minimal participation. We affirm the convictions and all but one of the sentences.[1]

## FACTS AND PRIOR PROCEEDINGS

James Robert Winkleman ("Winkleman") and Phillip Ross Rinker ("Rinker") owned and operated a small Los Angeles travel agency called North Ranch Travel, Inc. ("North Ranch"). Brenton Neil Mullins ("Mullins") worked at North Ranch as an independent travel agent, using North Ranch's facilities to service his own clients in exchange for shared commissions with Rinker and Winkleman.

North Ranch leased SABRE computer terminals from American Airlines ("American"). SABRE is American's computerized travel reservations system, enabling travel agents to gather flight information and directly input travel reservations or make changes to existing reservations through the use of Passenger Name Records ("PNRs"). By scanning PNRs a travel agent can obtain information not only about flights but about passengers as well, including their names and whether they are using frequent flyer account numbers.

American assigns each SABRE user-agency a so-called "pseudo-city code" and each SABRE terminal its own identification number. In addition, travel agents with access to SABRE are given passwords, identification numbers, and "sine" codes. An agent logs onto a SABRE terminal by first entering his password and identification number, then "sines" in using his own sine code. Whenever an agent logs onto the system, the user-agency's pseudo-city code, the terminal's identification number, the agent's password,

---

1. In disposing of these consolidated appeals, we have elected to treat the major issues raised as though all three appellants had separately asserted them. Unless otherwise noted, however, we have neither discussed obviously meritless contentions nor disposed of any issue not first presented to the district court. *See United States v. Belden,* 957 F.2d 671, 674–75 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992).

personal identification number, and sine code, all appear in American's records.

In June 1987 an American flight from Chicago to Munich was delayed from taking off because the names on the passenger manifest did not match those on the baggage list: Luggage belonging to a passenger named Knoerr was designated for a seat assigned to a passenger named Janice Smith. A spot check revealed that Mr. Knoerr was on the flight and that Janice Smith was not. An examination of the SABRE reservation records for that flight showed that a PNR change substituting Smith for Knoerr had just been made on a SABRE terminal at North Ranch by someone using Winkleman's password, identification number, and sine code.

American personnel immediately notified Margaret Jeter ("Jeter"), American's Senior Security Representative working out of Los Angeles. Jeter's review of the Janice Smith AAdvantage account[2] showed PNR changes on other flights as well, all originating from North Ranch. In addition, the passenger manifests for those flights showed PNR changes made to other AAdvantage accounts, all originating from North Ranch and generally in the names of Smith, Jones, or Johnson. Further investigation revealed that these individuals did not exist and that American's mailing addresses for them were actually mail drops opened by Winkleman and controlled by him or Rinker.

As the result of Jeter's investigation, the FBI executed a search warrant at North Ranch where they found records of phony AAdvantage accounts, keys to various mail drops used for those accounts, records of ticket sales obtained for those accounts, and records of credit card accounts, some in false names, used by Winkleman and Rinker to make those ticket purchases. According to American's records, individuals at North Ranch using passwords, identification numbers, and sine codes belonging to Mullins, Rinker, and Winkleman created some 850 fictitious AAdvantage accounts, 726 of which had accumulated a total of more than 61 million frequent flyer miles, with addresses traced to 29 mail drops and resulting in North Ranch's obtaining for resale 546 free airline tickets. The loss to American was subsequently valued at more than $1.3 million.[3]

According to Jeter, the North Ranch frequent flyer scam worked as follows: A travel agent using SABRE would scan American flight manifests for unsecured PNRs (i.e., reservations unprotected against alteration or deletion) that lacked AAdvantage account numbers. Upon finding one, the agent would delete the name appearing on the unsecured PNR and substitute a fictitious one with an existing AAdvantage account number. Once the fictitious individual's AAdvantage account had been credited with enough frequent flyer miles to qualify for a free airline ticket, the agent would obtain a certificate therefor from American, convert the certificate to an airline ticket, and sell that ticket to a third party.

A federal grand jury handed down a 22-count indictment charging Winkleman, Rinker, and Mullins with conspiracy, mail fraud, use of fictitious names in furtherance of a scheme to defraud, and wire fraud. Following a jury trial, Winkleman was found guilty of 15 counts and Rinker and Mullins were found guilty of 10 counts each. The district court sentenced Winkleman to 48 months' imprisonment and imposed a $250,000 fine; Rinker received a 24-month jail term and a $15,000 fine; and Mullins got 21 months and a $5,000 fine. All three have timely appealed and are currently free on bail.

## ANALYSIS

I. *Whether The District Court Erred By Excluding Evidence That No Mail Or Wire Fraud Occurred Because American Was Not Deprived Of Any Of Its Property*

### A. Standard of Review

■ Although a district court's construction of the Federal Rules of Evidence is a

---

2. AAdvantage is the name of American's frequent flyer program.

3. All of these numbers, including the amount of loss suffered by American, were vigorously disputed by the three agents.

question of law subject to *de novo* review, *United States v. Cuozzo,* 962 F.2d 945, 947 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992), we examine its rulings on the admissibility of evidence involving factual determinations for an abuse of discretion. *United States v. Wood,* 943 F.2d 1048, 1055 n. 9 (9th Cir.1991). We apply the same abuse of discretion standard when reviewing a district court's decision to exclude evidence based on an improper defense. *United States v. Slaughter,* 891 F.2d 691, 696 (9th Cir.1989) (citing *United States v. Cottier,* 759 F.2d 760, 763 (9th Cir.1985)), *appeal after remand,* 956 F.2d 276 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3053, 120 L.Ed.2d 919 (1992).

### B. Discussion

■ The first—and principal—argument raised by all three appellants is that they did not commit mail or wire fraud because they did not deprive American of anything of value. Boiled to its essence, their contention is that credit for miles flown on an airline is the property of the passenger who does the flying, and a passenger who elects not to become a member of an airline's frequent flyer program constructively abandons his property, *i.e.,* his mileage credit, to anyone else who wants it. Since deprivation of property is an essential element of both mail fraud and wire fraud, *see* 18 U.S.C. §§ 1341, 1343, and the appellants' actions did not deprive *American* of any of *its* property, the appellants could not have been guilty of either of those offenses. Accordingly, the district court erred by excluding evidence showing that American not only placed little or no value on those mileage credits, but actually viewed them as a liability.

This argument was rejected by the Tenth Circuit in a case nearly on all fours with the instant appeals. In *United States v. Schreier,* 908 F.2d 645 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 787, 112 L.Ed.2d 850 (1991), the court held that:

The Schreiers' scheme involved the accumulation of mileage for which American would not otherwise be liable because it was not claimed by the passengers who actually flew. When liability is created on American's books, through a transfer of mileage from nonmember passengers to members, the victim is American, because that corporation thereby owes a liability that otherwise would not exist. By their device of replacing nonmember passengers' names in the computer with a fictional name and account number, the Schreiers have victimized American, by fraud, and through use of computer access, wire fraud. The wire fraud here is not essentially different from that in *United States v. Giovengo,* 637 F.2d 941 (3d Cir.1980), where airline ticket agents used their access to computer generated tickets to collect from cash paying customers, pocket the money, returning to the airline as void the tickets the customers bought.

908 F.2d at 647.

Similarly, in *United States v. Loney,* 959 F.2d 1332 (5th Cir.1992), the Fifth Circuit upheld the wire fraud conviction of a travel agent who conspired to deprive American of award coupons, redeemable for free airline tickets, by adding bogus mileage to legitimate AAdvantage accounts. In an excellent discussion of the relevant background law, including many of the cases cited by the appellants in the instant appeals,[4] the court in *Loney* ruled that frequent flyer award coupons, being "something of value" because they could be used to obtain free airline tickets, were obviously property for purposes of the federal wire fraud statute. *Id.* at 1336.

Citing our decision in *Transworld Airlines, Inc. v. American Coupon Exch., Inc.,* 913 F.2d 676 (9th Cir.1990) (*"TWA"*), the appellants counter by arguing that, because frequent flyer award coupons represent contractual rights and not property rights *per se,* credit for miles flown on an airline cannot be the property of the airline. The appellants' reliance on *TWA* is misplaced. We explicitly noted in that case that airline tickets could be construed as property when they are deemed to be "things of value." 913 F.2d

---

4. *E.g., Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *Transworld Airlines, Inc. v. American Coupon Exch.,* 913 F.2d 676 (9th Cir. 1990); *United States v. Schreier, supra.*

at 688. *Accord United States v. Loney,* 959 F.2d at 1336 (citing *TWA* and distinguishing property rights from contract rights in the context of the public policy against restraints on alienation of property).

■ In the instant cases the appellants obtained things of value, *viz.*, credit for miles flown by others and mileage coupons that were convertible to free airline tickets, *see Loney,* 959 F.2d at 1336, and did so by misusing confidential information provided by American. *See United States v. Schreier,* 908 F.2d at 647. *Cf. United States v. Bruchhausen,* 977 F.2d 464, 467–68 (9th Cir.1992) (distinguishing a manufacturer's property interest in confidential information from any interest the manufacturer might have in a product's ultimate destination). Because the appellants' conduct resulted in the fraudulent deprivation of things of value which resulted in the imposition of liabilities on American that American would not otherwise have borne, the district court did not err by excluding evidence concerning the purported "non-property" status of frequent flyer mileage.[5]

## II. Whether There Was Sufficient Evidence To Support The Convictions

### A. Standard of Review

There is sufficient evidence to support a conviction if, "'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Bishop,* 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

### B. Discussion

■ The appellants contend that the evidence at most demonstrated that someone at North Ranch committed the acts alleged, but that it was insufficient to support their convictions for those acts. They contend that other North Ranch employees had access to the SABRE terminals and that the passwords, personal identification numbers, and sine codes were not kept particularly secure.

The evidence concerning Winkleman's and Rinker's culpability was overwhelming. While the question is closer with respect to Mullins, the record convinces us that sufficient evidence was presented to link him to the unlawful acts. Because any rational jury could have found beyond a reasonable doubt the essential elements of the crimes for which the appellants were convicted, their claims of insufficient evidence fail. *See United States v. Bishop,* 959 F.2d at 829.

## III. Whether The Government Used False And/Or Misleading Evidence To Obtain The Appellants' Convictions

### A. Standard of Review

■ A defendant's complaint of prosecutorial misconduct based on the government's alleged use of false or misleading evidence at trial is subject to *de novo* review. *United States v. Rewald,* 889 F.2d 836, 860 (9th Cir.1989), *amended by order,* 902 F.2d 18 (9th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990).

### B. Discussion

The appellants argue that Margaret Jeter's testimony at trial was false or at least misleading with respect to the size of the scheme, and that the district court's failure to make specific findings regarding the alleged lack of pretrial discovery on this issue requires a remand. Aside from the fact that the record shows that defense counsel cross-examined Jeter on this point and failed to object to the introduction of the evidence at trial, a remand would not be in order since, on the strength of this record, any error was

---

5. In line with this issue is Winkleman's argument that he had a good faith belief in the lawfulness of his conduct, and the district court erred by not giving a more general good faith jury instruction and/or by failing to grant him a new trial pursuant to *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). We reject this contention. Winkleman's offer of evidence on the issues of value and abandonment had nothing to do with his claim that he lacked wilfulness. Moreover, his advancement of a new legal theory does not constitute newly discovered evidence warranting a new trial. Finally, the district court did in fact give a good faith jury instruction, albeit not the one Winkleman would have liked.

harmless.[6] *See United States v. Rewald,* 889 F.2d at 860.

### IV. *Whether The Substitution Of The Alternate Juror Was Error*

#### A. Standard of Review

■ A district court may excuse a juror and substitute an alternate juror prior to the commencement of jury deliberations. Fed. R.Crim.P. 24(c); *United States v. Barrett,* 703 F.2d 1076, 1083 n. 12 (9th Cir.1983). Such decisions are reviewed for an abuse of discretion. *United States v. Echavarria–Olarte,* 904 F.2d 1391, 1395 (9th Cir.1990). A district court's decision to excuse a juror after deliberations have begun is also reviewed for an abuse of discretion. *United States v. Egbuniwe,* 969 F.2d 757, 760 (9th Cir.1992) (juror excused, without substitution of alternate juror, after deliberations had begun, pursuant to Fed.R.Crim.P. 23(b)).

#### B. Discussion

■ The appellants' contention that the district court erred by substituting an alternate juror during deliberations is also meritless. The language of Fed.R.Crim.P. 24(c) is mandatory: "[T]he rule allows an alternate to be substituted for a regular juror only before the jury retires and requires that when the jury retires alternates who have not replaced regular jurors be discharged." 2 Charles A. Wright, *Federal Practice & Procedure,* § 388 at 390 (1982) ("Wright"). So long as the substitution takes place prior to deliberations, it "is within the prerogative of the trial court and does not require the consent of any party." *Id.* at 386; *accord United States v. Barrett,* 703 F.2d at 1083 n. 12. It is only if the substitution takes place *after* jury deliberations have begun that express consent of the defendant(s) must appear on the record. *United States v. Olano,* 934 F.2d 1425, 1437 & n. 21 (9th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 1935, 118 L.Ed.2d 542 (1992); *see also* Wright, § 388 at 89 (Supp.1992).

The record shows that the regular juror in question had been involved in a serious auto-

mobile accident and was unable to come to court, that the jury had neither begun its deliberations nor been instructed by the court, and that the alternates had not yet been discharged. Accordingly, the district court did not abuse its discretion in ordering the substitution of the alternate juror. *See United States v. Echavarria–Olarte,* 904 F.2d at 1395.

### V. *Whether The Electronic Intercept Violated The Fourth Amendment*

#### A. Standard of Review

■ We review a motion for judgment of acquittal under the same standard applied to a challenge to the sufficiency of the evidence. *United States v. Shirley,* 884 F.2d 1130, 1134 (9th Cir.1989). The denial of a motion for judgment of acquittal based on the timeliness of the motion necessarily involves factual findings subject to review for clear error. *United States v. Stauffer,* 922 F.2d 508, 516 (9th Cir.1990).

#### B. Discussion

■ The appellants' argument that they were entitled to judgments of acquittal because Jeter's monitoring of their SABRE communications violated their Fourth Amendment rights finds no support in the law. American, through SABRE, is a provider of wire or electronic communication service and Jeter was acting within the scope of her employment to protect the rights and property of her employer by monitoring North Ranch's apparent misuse of American's electronic communication service. *See* 18 U.S.C. § 2511(2)(a)(i). Moreover, one of the parties to the communication (viz., American, as Jeter's employer) had consented to the monitoring. *See* 18 U.S.C. § 2511(2)(d). There was no error. *See United States v. Shirley,* 884 F.2d at 1134.

### VI. *Whether The District Court Erred In Its Imposition Of The Sentences*

#### A. Standard of Review

■ We review *de novo* the legality of a sentence, *United States v. Hahn,* 960 F.2d

---

**6.** For similar reasons we reject Mullins' arguments concerning the prosecutor's conduct dur-

ing trial.

903, 907 (9th Cir.1992), as well as the district court's interpretation and application of the Sentencing Guidelines. *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir.) (interpretation), *cert. denied*, —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992); *United States v. Kohl*, 972 F.2d 294, 297 (9th Cir.1992) (application). We examine for clear error the district court's factual findings underlying a sentence. *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992).

### B. Discussion

#### 1. Apportionment and Calculation of Loss

 The appellants argue that the district court erred by failing to apportion the loss calculations between pre- and post-Guideline dates. Although mail and wire fraud offenses that straddle the Sentencing Guidelines' effective date of November 1, 1987, are not deemed to be continuing offenses and must be sentenced separately, a district court confronted with a situation like that presented in the instant appeals can avoid the risk of double-counting losses by sentencing concurrently on the pre- and post-Guideline counts. *See United States v. Niven*, 952 F.2d 289, 293–94 & n. 2 (9th Cir. 1991) (per curiam). Because the district court properly imposed concurrent sentences on the appellants' pre- and post-Guideline offenses, the sentences do not run afoul of *Niven.*

 The appellants also contend that the district court erred by failing to explain how it arrived at a figure between $500,000 and $1,000,000 as the total loss suffered by American, particularly when the appellants' own figures represented a loss that was only 1% of the amount calculated by the government. It is the probable or intended loss resulting from a crime, however, not the actual loss suffered, that a district court must determine for sentencing purposes. *United States v. Hernandez*, 952 F.2d 1110, 1118 (9th Cir.1991) (citing United States Sentencing Commission, *Guidelines Manual*, § 2F1.1 (Nov.1989) ("U.S.S.G.")), *cert. denied*, —— U.S. ——, 113 S.Ct. 334, 121 L.Ed.2d 252 (1992); *United States v. Davis*, 922 F.2d 1385, 1391 (9th Cir.1991). A product's fair market value ordinarily constitutes an appropriate measure of loss. *Hernandez*, 952 F.2d at 1118. In ascertaining a product's fair market value, "[t]he loss need not be determined with precision, and may be inferred from any reasonably reliable information available." *Id.* (quoting U.S.S.G. § 2B1.1, comment. (n. 3)).

The record shows that the district court accepted and incorporated the presentence investigative reports' ("PSI") loss calculation exceeding $1.3 million in its findings on this point, and then discounted that figure to one falling between $500,000 and $1,000,000 to reflect the fact that the appellants did not profit from every ticket obtained. The district court's loss calculation was adequate under the circumstances. *See generally United States v. Avila*, 905 F.2d 295, 298–99 (9th Cir.1990) (district court's incorporation of PSI findings sufficient for purposes of review where adequately supported by record).

#### 2. Sentence Enhancements

##### a. Winkleman

 Winkleman argues that his sentence must be vacated and his case remanded for resentencing because (1) he should not have received a 4–level upward adjustment for his role in the offense; (2) he should have received either a 4–point downward adjustment for his minimal part in the crime, or a 2–level downward adjustment for a minor role; and (3) in any event, his sentence of 48 months exceeded the Guideline range determined by the court.

The short answer to points (1) and (2) is that U.S.S.G. § 3B1.1(a) authorizes a 4–level upward adjustment in a defendant's offense level if he "was an organizer or leader of a[n extensive] criminal activity". The record reflects that Winkleman exercised decision making authority and, *inter alia*, recruited accomplices for a scheme that had at least three participants and used the unknowing services of many outsiders. *See* U.S.S.G. § 3B1.1, comment. (nn. 2, 3). The district court did not err in making the 4–level upward adjustment and, *a fortiori*, it properly denied the request for 2– and 4–level downward adjustments.

The government concedes that Winkleman's sentence is in error. At sentencing the district court and counsel calculated an offense level of 21 which, following the district court's grant of an 8– rather than 9– level increase based on amount of loss, should have resulted in a reduction of Winkleman's offense level from 21 to 20. Because this mathematical error resulted in the imposition of a sentence slightly beyond the upper range for his correct criminal history category and offense level, Winkleman's sentence must be vacated and remanded for resentencing.

#### b. Rinker

Rinker argues that the district court erred not only by adjusting his offense level upward 2 points, but by failing to adjust his offense level downward either 2 or 4 points, based on his minor or minimal role in the offense. A court may adjust a defendant's offense level upward by 2 points if the defendant engaged in "more than minimal planning" in an offense involving fraud and deceit resulting in loss to the victim in excess of $2,000. U.S.S.G. § 2F1.1(b)(2)(A). "More than minimal planning" is defined as, *inter alia*, "repeated acts over a period of time" or, if a single act, "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 1B1.1, comment. (n. 1(f)). Such planning also "exists if significant affirmative steps were taken to conceal the offense." *Id.*

The record supports the PSI's finding on this point. Because the district court did not err by adjusting Rinker's offense level upward by 2 points, it necessarily follows that it did not err by rejecting Rinker's argument that he was entitled to a 2– or 4–level downward adjustment.

#### c. Mullins

Mullins argues that the district court erred by not departing downward in imposing his sentence. He argues that the court incorrectly believed that it lacked the discretion to depart. Because the record does not support this contention, but indicates rather that the district court acted within its discretion in denying his request for a downward

departure, we lack jurisdiction to review the district court's decision. *See United States v. Reyes*, 966 F.2d 508, 510 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 268 (1992).

Because we find no merit to any of the appellants' remaining arguments, the judgments of conviction are all AFFIRMED. The sentences imposed on Mullins and Rinker are AFFIRMED. The sentence imposed on Winkleman is VACATED and REMANDED for resentencing.