**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 03-2189 |
| v. | (D. New Mexico) |
| JUAN CARLOS HERRERA, | (D.C. No. 02-CR-00375) |
| Defendant-Appellant. | |

**ORDER ON REMAND FROM THE**
**UNITED STATES SUPREME COURT**

Before **TACHA** and **HENRY**, Circuit Judges, and **WHITE**, District Judge.[*]

Juan Carlos Herrera contends that the district court committed plain

constitutional *Booker* error when it adjusted his sentence for (1) possessing a

weapon in connection with a drug trafficking crime under USSG 2D1.1(b)(1)(2)

and (2) for his role as an organizer, leader, manager, or supervisor of an illegal

enterprise under USSG 3B1.1(c). For the reasons stated herein, we affirm Mr.

Herrera's sentence.

---

[*]The Honorable Ronald A. White, District Judge, United States
District Court for the Eastern District of Oklahoma, sitting by designation.

## I. BACKGROUND

A. Factual History

We recounted the facts previously in *United States v. Herrera*, 118 F.

App'x 448, 450 (10th Cir. Dec. 14, 2004) (unpublished) ("*Herrera I*"), *vacated*

*and remanded,* 126 S. Ct. 103 (2005) ("*Herrera II*"):

> This case arises out of an undercover agent's purchase of crack cocaine (cocaine base) from Mr. Herrera at an Albuquerque apartment that police officers suspected to be the site of a drug trafficking operation. On December 13, 2001, the agent made a request to Mr. Herrera to purchase two ounces of crack cocaine. Mr. Herrera then instructed co-defendant Fidel Laroza to retrieve the drug. Mr. Laroza retrieved the drug from the front porch area and handed it to Mr. Herrera. Mr. Herrera then gave the drug to the agent and received $1,200 in return.
>
> A second sale took place on January 15, 2002, when a confidential informant contacted Mr. Herrera's brother, Julian Herrera, to negotiate the purchase of another $1,200 worth of crack cocaine. Later that day, an undercover agent arrived at the same apartment and met with Mr. Herrera, Mr. Laroza, and the third co-defendant, Magnolto Coll. Mr. Herrera asked the agent what he needed and then directed the agent to remain inside while he walked outside to retrieve the crack cocaine. After revealing that he did not have enough cocaine at the apartment, Mr. Herrera signaled Mr. Coll to follow him, and the two left the apartment for an undisclosed location. When they returned, they sold the undercover agent approximately seventy-seven grams of crack cocaine.
>
> On February 12, 2002, agents obtained a warrant to search the apartment that served as the site of the two previous sales. The search revealed a bag of marijuana and a .45 caliber revolver loaded with six rounds of ammunition, discovered behind two mattresses in one of the bedrooms. In the same bedroom, agents discovered documents belonging to Mr. Herrera and various drug paraphernalia. The agents arrested Mr. Herrera and the other two co-defendants at the time of the

search.

118 F. App'x at 449-50.

B. Procedural History

On March 13, 2002, a federal grand jury indicted Mr. Herrera and two co-defendants on one count of conspiracy to distribute more than fifty grams of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and two counts of distribution of more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). Mr. Herrera pleaded guilty to all three counts and was sentenced to 135 months' imprisonment.

Following Mr. Herrera's plea, the probation officer prepared a presentence report (PSR). It recommended that Mr. Herrera receive (1) a two-level upward adjustment to his base offense level pursuant to USSG § 2D1.1(b)(1) because a dangerous weapon was possessed during the drug trafficking offense, and (2) an additional two-level upward adjustment pursuant to USSG § 3B1.2 because he was an organizer, leader, manager, or supervisor in the instant offense. Based on those upward adjustments and a three-level downward adjustment for acceptance of responsibility, the PSR recommended an adjusted offense level of 33 and a criminal history category of I.

Mr. Herrera objected to these upward adjustments but not on the grounds of

a *Blakely* Sixth Amendment violation. He argued that there was no evidence of his involvement in a drug conspiracy after January 15, 2002, and that the government presented no evidence that he was in fact a leader or organizer of anything in the drug deals. The district court overruled his objections and sentenced him to 135 months' imprisonment, the low end of the guideline range.

In rejecting Mr. Herrera's objection to the firearm enhancement pursuant to USSG § 2D1.1(b)(1), the district court acknowledged that the weapon was not found until one month after the final sale of cocaine in January 2002. However, the court noted, "this defendant has admitted to his participation in a conspiracy to distribute crack cocaine which encompassed his arrest." Aplt's App. vol. II, at 108 (Sentencing Hr'g, dated Aug. 11, 2003). In addition, the district court noted that the PSR indicated that on the day of Mr. Herrera's arrest, "various drug paraphernalia was located in the same bedroom of the apartment where the revolver was found." *Id.*

As to the leader/organizer adjustment under USSG 3B1.1(c), the district court reviewed the offense reports and noted that "[t]he offense reports, as outlined in the [PSR], indicated that Mr. Herrera exercised control over [his] codefendants." *Id.* The district court concluded that "[t]he conduct of [Mr. Herrera] during these transaction meets the requirement that would identify him as a leader/organizer," and overruled the objection. *Id.* at 109. The district court

acknowledged that Mr. Herrera was not eligible for a safety valve reduction and stated that "[s]ince the defendant admitted – and, of course, he did receive a three-level reduction for acceptance of responsibility, . . . I do think a sentence on the low end of the guideline range is applicable." *Id.* at 110. The district court sentenced Mr. Herrera to 135 months, the lowest possible sentence under the guidelines range.

On appeal, Mr. Herrera argued that the district court erred in accepting his guilty plea and sought to have the plea withdrawn or amended. In the alternative, he challenged the district court's upward adjustments of his sentence for possession of a dangerous weapon in connection with a drug trafficking crime and for being an organizer, leader, manager, or supervisor of the criminal activity. Finally, in light of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), he also argued that the district court committed plain error when it applied the same upward adjustments to his sentence.

We affirmed his conviction and sentence in all respects. *See Herrera I,* 118 F. App'x at 454. Thereafter, Mr. Herrera filed a petition for a writ of certiorari in the United States Supreme Court, asserting that the sentence was erroneous pursuant to *Blakely*. During the pendency of the Supreme Court proceeding, the Court decided *United States v. Booker*, 125 S. Ct. 738 (2005). Thereafter, the Court summarily vacated judgment and remanded for further consideration in

light of *Booker*. *See Herrera II*, 125 S. Ct. at 103.

At our direction, the parties have filed supplemental briefs on the applicability of *Booker*. Mr. Herrera contends that the district court erred when it found facts that increased his offense level by two levels for the application of the specific offense characteristic of possessing a firearm under USSG § 2D1.1(b)(1), and two levels for being a leader or organizer under USSG § 3B1.1(c). Without these adjustments, Mr. Herrera contends he faced a mandatory minimum sentence of 120 months. He also maintains that, without these upward adjustments, he qualified for the safety valve under USSG § 5C1.2 and 18 U.S.C. § 3553(f), which might have allowed him to receive a sentence below 120 months. For the following reasons, we affirm Mr. Herrera's sentence and reinstate our original order and judgment.

## II. DISCUSSION

A. Standard of Review

Because Mr. Herrera did not raise a *Booker* claim before the district court, we review for plain error. To establish plain error, he must demonstrate there is (1) error, (2) that is plain, and (3) the error affects his substantial rights. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). If these three

prongs are met, we may exercise our discretion to correct the error if (4) it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Dazey*, 403 F.3d. at 1174.

B. Plain error

"A district court commits constitutional *Booker* error when it applies the Guidelines in a mandatory fashion, makes factual findings (other than the fact of prior convictions), and imposes a sentence above the maximum that would apply in the absence of such findings." *United States v. Clark*, 415 F.3d 1234, 1238 (10th Cir. 2005) (internal quotation marks and emphasis omitted). Constitutional *Booker* error satisfies the first two prongs of the plain-error test. *Id.* at 1240.

The burden of satisfying the third prong is on the defendant. *Id.* He can meet this burden by showing that the district court would impose a sentence outside the applicable guidelines range if the case were remanded, or by showing a reasonable probability that a jury, applying a beyond-a-reasonable-doubt standard, would not have found the facts necessary to enhance the sentence. *Id.* If the defendant can satisfy the third prong, the fourth prong still requires him to show that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (internal quotation marks omitted). Although we conduct this review less exactly in cases of constitutional *Booker* error, *see Dazey*, 403 F.3d at 1174, it is still a "demanding

standard." *Gonzalez-Huerta*, 403 F.3d at 737.

Because the fourth prong imposes such a high burden, these cases are often resolved at the fourth prong rather than the third. *Id.* at 736. "[S]entencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended." Id. at 739.

Mr. Herrera is unable to satisfy this burden. His briefing on this issue consists of two short paragraphs that do no more than allege the error without setting forth any facts or supporting argument. He does not point to anything in the record that suggests the district court would impose a lower sentence on remand, and nothing in the record to indicate that this might be the case. *See United States v. Lawrence*, 405 F.3d 888, 907 (10th Cir. 2005) ("Whether the district court would simply reimpose the same sentence on remand, or whether instead the sentence would likely change to a significant degree if [the case] were returned to the district court for discretionary resentencing, is one factor to consider in determining whether the defendant can satisfy the fourth plain-error prong." (brackets in original, internal quotation marks omitted)). Mr. Herrera has not demonstrated that the *Booker* error in any way "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (internal quotation marks omitted).

F I L E D
United States Court of Appeals
Tenth Circuit

DEC 14 2004

PATRICK FISHER
Clerk

III. CONCLUSION

For the reasons set forth above, we REINSTATE our prior Order and

Judgment and AFFIRM Mr. Herrera's sentence.

Entered for the Court

Robert H. Henry
United States Circuit Judge

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 03-2189 |
| v. | (D. New Mexico) |
| JUAN CARLOS HERRERA, | (D.C. No. 02-CR-00375) |
| Defendant-Appellant. | |

---

**ORDER AND JUDGMENT***

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

Before **TACHA**, Chief Circuit Judge, **HENRY**, Circuit Judges, and **WHITE**, District Judge.[**]

---

On March 13, 2002, a federal grand jury indicted Juan Carlos Herrera and two co-defendants on one count of conspiracy to distribute more than fifty grams of a mixture and substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846, and two counts of distribution of more than fifty grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Mr. Herrera pleaded guilty to all three counts. He now argues that the district court erred in accepting his guilty plea and seeks to have the plea withdrawn or amended. In the alternative, he challenges the district court's upward adjustments of his sentence for possession of a dangerous weapon in connection with a drug trafficking crime and for being an organizer, leader, manager, or supervisor of the criminal activity. Finally, in light of the Supreme Court's recent decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), he also argues that the district court committed plain error when it applied the same upward adjustments to his sentence.

As Mr. Herrera, with counsel, clearly entered a plea at trial in an effort to receive safety valve treatment and did not move to withdraw his plea before the

---

[**]The Honorable Ronald A. White, District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

-2-

district court, we review for plain error and affirm the conviction based on his guilty plea. As for the sentencing adjustments we conclude that they were based on overwhelming evidence in the record, and, because Mr. Herrrera cannot establish plain error, we likewise reject his *Blakely* claim. We therefore affirm his sentence.

# I. BACKGROUND

This case arises out of an undercover agent's purchase of crack cocaine (cocaine base) from Mr. Herrera at an Albuquerque apartment that police officers suspected to be the site of a drug trafficking operation. On December 13, 2001, the agent made a request to Mr. Herrera to purchase two ounces of crack cocaine. Mr. Herrera then instructed co-defendant Fidel Laroza to retrieve the drug. Mr. Laroza retrieved the drug from the front porch area and handed it to Mr. Herrera. Mr. Herrera then gave the drug to the agent and received $1,200 in return.

A second sale took place on January 15, 2002, when a confidential informant contacted Mr. Herrera's brother, Julian Herrera, to negotiate the purchase of another $1,200 worth of crack cocaine. Later that day, an undercover agent arrived at the same apartment and met with Mr. Herrera, Mr. Laroza, and

the third co-defendant, Magnolto Coll. Mr. Herrera asked the agent what he needed and then directed the agent to remain inside while he walked outside to retrieve the crack cocaine. After revealing that he did not have enough cocaine at the apartment, Mr. Herrera signaled Mr. Coll to follow him, and the two left the apartment for an undisclosed location. When they returned, they sold the undercover agent approximately seventy-seven grams of crack cocaine.

On February 12, 2002, agents obtained a warrant to search the apartment that served as the site of the two previous sales. The search revealed a bag of marijuana and a .45 caliber revolver loaded with six rounds of ammunition, discovered behind two mattresses in one of the bedrooms. In the same bedroom, agents discovered documents belonging to Mr. Herrera and various drug paraphernalia. The agents arrested Mr. Herrera and the other two co-defendants at the time of the search.

On July 8, 2002, Mr. Herrera pleaded guilty to two counts of distribution of more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Counts II and III), and one count of conspiracy to distribute more than fifty grams of a mixture and substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846 (Count I). Mr. Herrera was not offered a plea agreement, but pleaded guilty "with the hope and the possibility that he may qualify for the safety valve [19 U.S.C. § 3553(f) and USSG §

5C1.2]." Aplt's App. vol. II, at 82 (Plea Tr., dated July 8, 2002).

Following Mr. Herrera's plea, the probation officer prepared a presentence report (PSR) recommending that Mr. Herrera receive a two-level upward adjustment to his base offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because a dangerous weapon was possessed during the drug trafficking offense, and an additional two-level upward adjustment pursuant to U.S.S.G. § 3B1.2 because he was an organizer, leader, manager, or supervisor in the instant offense. Based on those upward adjustments and a three level downward adjustment for acceptance of responsibility, the PSR determined Mr. Herrera to have an adjusted offense level of 33 and a criminal history category of I. Mr. Herrera objected to these upward adjustments, but the district court overruled his objections and sentenced him to 135 months' imprisonment, the low end of the guideline range.

## II. DISCUSSION

### A. The Guilty Plea

Mr. Herrera argues that the district court erred in entering his guilty plea on all three counts because he "never admitted the conspiracy count." Aplt's Br. at 20. He asserts that "[a]t no time did the trial court ask [him] regarding each count what or how his [sic] pleaded," *id.* at 18, and that he "never made any statements admitting to having been in a conspiracy beyond the second sale on January 15,

2002." *Id.*

While Mr. Herrera admits that he did not move to withdraw his plea in the district court, he requests that we review this issue for fundamental or plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002) (holding that a defendant who lets an error in the trial court's plea colloquy pass without objection "has the burden to satisfy the plain-error rule and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights"). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Price,* 265 F.3d 1097, 1107 (10th Cir. 2001). The government responds that we should not consider Mr. Herrera's claim at all because "plain error review is not appropriate when the alleged error involves a resolution of factual disputes." Aple's Br. at 9 (citing *United States v. Easter*, 981 F.2d 1549, 1555-56 (10th Cir. 1992)).

As we see it, Mr. Herrera's argument does not require us to resolve a factual dispute. Instead, this argument requires us to determine whether the district court conducted a proper inquiry to ensure that Mr. Herrera's guilty plea was knowing, voluntary, and intelligent. We will therefore review for plain error.

During the plea colloquy, Mr. Herrera answered "yes" to questions from the court regarding whether he was pleading guilty of his own free will, whether he

had discussed his decision to plead guilty with his attorney, and whether he understood the charges against him and the ramifications of pleading guilty. Aplt's App. vol. II, at 83-88. Mr. Herrera's attorney then stated,

> My client is prepared to plead to the two transactions that he did, which are Count II and III. With regard to the conspiracy count, to the extent that the basis of the conspiracy is his involvement in those two transactions, he's going to plead to that but wants to make clear that, with regard to the other named codefendants in the conspiracy count, they were not involved with him in those two transactions.

*Id.* at 88-89.

As the above portion of the colloquy clearly shows, despite considerable evidence of the involvement of his co-defendants, Mr. Herrera sought persistently to testify on their behalf. But after ensuring that pleading guilty would not hinder his ability to testify for Mr. Laroza and Mr. Coll, Mr. Herrera did knowingly and intelligently plead guilty to conspiracy to distribute more than 50 grams of cocaine base. Mr. Herrera's attorney stated that "he's going to plead to that," referring to the conspiracy count. *Id.* at 88. Mr. Herrera and his counsel then sought the government's approval in entering this plea, and the government informed the court that Mr. Herrera's unwillingness to admit to conspiring with Mr. Coll and Mr. Laroza would not "prevent [him] from pleading guilty to the conspiracy count so long as he agrees that he did conspire with others," *id.* at 89, as the indictment covered other co-conspirators besides the two co-defendants.

-7-

The court then allowed Mr. Herrera and his lawyer to confer. After this conference and upon being advised by counsel that the defendant "understands that," the court clearly asked Mr. Herrera if he was pleading guilty to Count I. *Id.* "Yes" was the reply. *Id.* at 90. The court later asked Mr. Herrera, "[H]ow do you plead to the three counts in the indictment, guilty or not guilty?" *Id.* at 95. He replied, "Guilty." *Id.*

The plea colloquy might have been more straightforward had the court demanded that the Mr. Herrera state precisely with whom he had conspired, but that would be adding a belt to the suspenders. From the record of the plea proceedings, it is clear that Mr. Herrera made a knowing, voluntary, and intelligent plea to all charges, including conspiracy "with other persons whose names are known and unknown to the grand jury." Aplt's App. vol. I, at 27 (Indictment, filed March 13, 2002). We therefore hold that the district court did not plainly err when it accepted Mr. Herrera's guilty plea with respect to all three counts.

B. Sentencing Adjustments

Mr. Herrera also challenges the district court's application of two upward adjustments under the Sentencing Guidelines: (1) a two-level adjustment because "a dangerous weapon (including a firearm) was possessed," U.S.S.G. § 2D1.1(b),

during the drug trafficking offense; and (2) an additional two-level adjustment because Mr. Herrera was determined to be an "organizer, leader, manager, or supervisor," U.S.S.G. § 3B1.1, in the criminal activity. "We review the district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts." *United States v. Jardine*, 364 F.3d 1200, 1206 (10th Cir. 2004).

1. Firearm Enhancement

Mr. Herrera argues that the district court erred when it applied the firearm enhancement because there was no evidence that the revolver discovered during the February 12, 2002 search was present during either of the two transactions in which Mr. Herrera admitted involvement. He asserts that there is no evidence of his involvement in a drug conspiracy after January 15, 2002, and that at the plea hearing, he "twice limited his involvement in charged criminal activity to no later than January 15, 2002." Aplt's Br. at 23.

We disagree. The uncontroverted facts show that Mr. Herrera sold drugs in the residence and that the revolver was found in a room with Mr. Herrera's belongings and various drug paraphernalia. Mr. Herrera does not dispute possession of the firearm; he argues only that the interval between the last

transaction and the discovery of the firearm was such that it is improbable that the weapon was connected to the offense. This argument, however, fails to take into account Mr. Herrera's guilty plea with respect to Count I. In addition to pleading guilty to the December 13, 2001, and January 15, 2002, transactions covered by Counts II and III, Mr. Herrera pleaded guilty to engaging in a drug trafficking conspiracy "[f]rom on or about December 13, 2001, up to and including February 12, 2002," Aplt's App. vol. I, at 27 (Indictment, filed March 13, 2002), the day he was arrested and the weapon was found. During the plea colloquy, Mr. Herrera never objected to the dates used in Count I. His only concern with Count I of the indictment surrounded the inclusion of his co-defendants. Upon being assured that he could plead guilty to Count I without implicating his co-defendants in the conspiracy, Mr. Herrera knowingly and intelligently pleaded guilty to the conspiracy count without expressing a concern about the dates used in the indictment.

In light of Mr. Herrera's guilty plea, the two-level adjustment for possession of a firearm is supported by the record. The "plain language of section 2D1.1(b)(1) and its commentary permit a trial judge to enhance a drug defendant's sentence for mere possession of a dangerous weapon even if there is no evidence other than proximity to suggest the gun was connected to the

offense." *United States v. Roberts*, 908 F.2d 645, 647 (10th Cir. 1992). Once the government meets its burden of proving possession by a preponderance of the evidence, "[t]he enhancement is then appropriate unless the defendant proves . . . that it is clearly improbable the weapon was connected with the offense." *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997). Here, there is ample evidence that the firearm was connected to the offense.

2. Aggravating Role Enhancement

Mr. Herrera's primary argument concerning the aggravating role enhancement under U.S.S.G. § 3B1.1 is that he never admitted he was the organizer or leader of anyone involved in the December 2001 or January 2002 crack cocaine sales. According to Mr. Herrera, the government "offered no inside information from its confidential sources that Mr. Herrera was in fact a leader or organizer of anything in the drug deals." Aplt's Br. at 27. He contends that the information provided by confidential sources actually indicated that Mr. Herrera's brother, Julian Herrera, was the true leader and organizer of the drug trafficking operation. He also notes that the government provided

> no evidence of drug records kept by Mr. Herrera, no evidence that Laroza or Coll worked for Mr. Herrera, no evidence that Mr. Herrera paid Laroza or Coll, no evidence that Mr. Herrera controlled Laroza or Coll [sic] drug dealing activities, no evidence that Mr. Herrera set prices, controlled the manner of sales, or claimed a larger share of the proceeds that [sic] Laroza or Coll, and no evidence that Mr. Herrera

recruited Laroza or Coll.

Aplt's Br. at 28.

The two-level aggravating role enhancement in U.S.S.G. § 3B1.1(c) applies "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than that described in [3B1.1] (a) or (b)." U.S.S.G. § 3B1.1(c). Once again, the uncontroverted evidence showed that Mr. Herrera directly negotiated with an undercover agent and orchestrated his co-defendants in various maneuvers, including instructing Mr. Laroza to retrieve crack cocaine from the porch on December 13, 2001, and signaling Mr. Coll to follow him on January, 15, 2002. Mr. Herrera and Mr. Coll then left to obtain the crack cocaine for the agent. During each transaction, Mr. Herrera collected the cash from the agent.

We have previously held that "section 3B1.1(c) and the term 'supervisor' are satisfied upon a showing that the defendant exercised any degree of direction or control over someone subordinate to him in the distribution scheme." *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir. 1990). The record is replete with conduct to establish the requirements of U.S.S.G. § 3B1.1(c). *See United States v. Gonzales Edeza*, 359 F.3d 1246, 1249 (10th Cir. 2004) (holding that defendant was a manager or supervisor based on "factual citations in [which] there were communications, specifically from the defendant to [a co-conspirator]

-12-

giving instructions, as well as other activities by [the defendant] where he was ordering and directing the conduct of [the co-conspirator]"). The fact that Mr. Herrera's brother Julian may have been the primary leader and organizer of the operation is inapposite, as the commentary to § 3B1.1 specifically provides that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, cmt. n.4. We therefore hold that the district court did not err when it applied the two-level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(c).

C. *Blakely* Claim

On July 29, 2004, Mr. Herrera filed an unopppsed motion for leave to file supplemental briefing concerning *Blakely v. Washington*, 124 S. Ct. 253 (2004), challenging the constitutionality of the upward adjustments to his sentence. He argues that *Blakely* requires that the enhancement to his sentence be found beyond a reasonable doubt by a jury. Because Mr. Herrera never raised this issue before the district court, this court reviews it only for plain error. *See United States v. Cotton*, 535 U.S. 625, 629, 631 (2002); *United States v. Badilla*, 383 F.3d 1137, 1142 n.2 (10th Cir. 2004).

This court will correct an error not raised before the district court only if: (1) there is an error; (2) that is plain; (3) that affects substantial rights; and (4)

that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Cotton,* 535 U.S. at 631. Even assuming that there was an error that was plain under *Blakely*, Mr. Herrera has failed to satisfy the fourth factor of the plain error analysis as to each adjustment. The evidence of the nexus between the firearm and the conspiracy is overwhelming. Similarly, there is overwhelming evidence that Mr. Herrera was a leader or organizer of the conspiracy. Because the evidence is overwhelming, we hold that the fourth element of the plain error test cannot be satisfied. *United States v. Keeling,* 235 F.3d 533, 540 (10th Cir. 2000).

## III. CONCLUSION

The district court did not commit plain error in entering Mr. Herrera's guilty plea, and it did not err in upwardly adjusting Mr. Herrera's offense level under USSG §§ 2D1.1(b). and 3B1.1. Because the evidence supporting those adjustments is overwhelming, Mr. Herrera has also not demonstrated that, in light of *Blakely*, the district court plainly erred in basing those enhancements on facts not found by a jury. Accordingly, we AFFIRM Mr. Herrera's conviction and sentence.

Entered for the Court,

-14-

Robert H. Henry
United States Circuit Judge