**UNITED STATES of America, Appellée,**

v.

**Mark A. SKRODZKI, Defendant, Appellant.**

**No. 93–1339.**

United States Court of Appeals, First Circuit.

Heard April 8, 1993.

Decided Nov. 17, 1993.

Stewart T. Graham, Jr., by Appointment of the Court, with whom Graham & Graham, Springfield, MA, was on brief, for defendant, appellant.

C. Jeffrey Kinder, Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., Boston, MA, was on brief, for appellee.

Before TORRUELLA and STAHL, Circuit Judges, and DiCLERICO,* District Judge.

DiCLERICO, Chief District Judge.

The defendant challenges the twenty-seven month sentence imposed under the Sentencing Guidelines after he pleaded guilty to one count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314, and four counts of structuring transactions to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3).[1] On appeal, he asserts the district court improperly (1) included the loss of eighty-three [2] computer boards ("boards") as relevant conduct when determining his sentence and (2) imposed a sentence in excess of Guideline provisions by calculating his offense level based upon an inflated value of the victim's loss. We affirm.

I.

BACKGROUND

Digital Equipment Corporation ("DEC") employed the defendant as a packaging engineer at its Westfield, Massachusetts plant.

---

* Of the District of New Hampshire, sitting by designation.

1. The court dismissed six counts of the Superseding Indictment on motion of the United States.

2. In their briefs, the defendant and the government mistakenly stated that the number of boards viewed as relevant conduct was seventy-three. At oral argument, the defendant conceded that the appropriate number was eighty-three.

He earned an hourly wage of $15.50 for an approximate annual salary of $32,240.

Beginning in 1988 and continuing through 1990 and while employed at DEC, the defendant sold 241 DEC boards without invoices, receipts or other documentary evidence of the transactions to Execudata, a sole proprietorship owned and operated by Peter Marcantonio. From 1989 through 1990, Marcantonio wire-transferred $959,293 to the defendant's account at United Cooperative Bank in West Springfield, Massachusetts ("United Cooperative") and $196,473 to the defendant's account at First Union Bank in Pompano Beach, Florida ("First Union"). Unlike the defendant, Marcantonio maintained business records that included the serial numbers of the 241 DEC boards.

After being alerted by United Cooperative of suspicious cash withdrawals, the Internal Revenue Service ("IRS") began investigating the defendant's activities. During the course of this investigation, IRS agents showed DEC officials a list of serial numbers provided to them by Marcantonio. DEC security officers reviewed the Westfield plant's inventory and discovered that 112 of the 241 boards had been removed from the stockroom without authorization. The government was unable to trace the other 129 boards to determine if they were stolen.

After the grand jury returned a Superseding Indictment on July 23, 1992, the defendant pleaded guilty to four counts of structuring currency transactions to evade reporting requirements and to one count of interstate transportation of stolen property.

At the defendant's sentencing hearing, the government conceded it could trace to the Westfield plant's stockroom only 112 of the 241 boards the defendant sold to Marcantonio. The government also conceded that a majority of the missing boards were used.

On the basis of the government's concessions, the district court found DEC could not confirm the number of missing boards that were used or new. The district court concluded that the Sentencing Guidelines did not require a precise determination of DEC's loss and permitted it to infer the amount of loss on the basis of reasonable reliable information, including the scope of the operation. The district court also noted that the probation department may have had the right to use the retail value of the boards to value DEC's loss. The court found the loss was more than $800,000, but did not exceed $1,489,746, the retail value suggested by DEC for new boards.[3] The district court adopted the factual findings and Sentencing Guideline application in the presentence report and determined that the defendant's offense level was seventeen and his criminal history category was I. *See* U.S.S.G. § 2B1.2 (1992).[4] The defendant was sentenced to a term of twenty-seven months' imprisonment on one count of interstate transportation of stolen property and to the same term to be served concurrently on the four structuring counts. This appeal ensued.

## II.

## DISCUSSION

### A. Relevant Conduct

■ The defendant asserts the government failed to prove by a preponderance of the evidence that eighty-three boards were stolen and the court improperly included those boards as relevant conduct in determining his sentence. According to the defendant, there are alternative explanations for the disappearance of the eighty-three boards. He denies having access to all areas in which the boards were stored and refutes the hearsay statements to the contrary by DEC em-

---

3. In its brief, the government states that the figures provided by DEC reflect the price for new boards. Brief for the Appellee at 5.

4. U.S.S.G. § 2B1.2 provides in pertinent part:
"(a) Base Offense Level: 4
(b) Specific Offense Characteristics
    (1) If the value of the stolen property exceeded $100, increase by the corresponding number of levels from the table in § 2B1.1."

U.S.S.G. § 2B1.1(b)(1) provides in pertinent part:
"If the loss exceeded $100, increase the offense level as follows:

| Loss (Apply the Greatest) | Increase in Level . . |
|---|---|
| (N) More than $800,000 | add 13 . . . ." |

ployees mentioned in the presentence report. He also argues that at the sentencing hearing, the court implicitly found the eighty-three boards were not stolen.[5] Absent proof the boards were stolen, the defendant contends the district court could not have considered them as relevant conduct.

The district court may include relevant conduct—"the same course of conduct or common scheme or plan as the offense of conviction"—in its determination of the applicable offense level. U.S.S.G. § 1B1.3(a)(2). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*" U.S.S.G. § 1B1.3, comment. (n. 9). To sentence the defendant for relevant conduct, the court must be satisfied that the government demonstrated by a preponderance of the evidence that the defendant unlawfully transported eighty-three stolen boards. *See United States v. Estrada–Molina,* 931 F.2d 964, 966 (1st Cir.1991) (government's demonstration by a preponderance of evidence of defendant's capability of producing negotiated but undelivered drugs permitted district court to impose a sentence that included relevant conduct). We review for clear error the court's finding that the defendant transported eighty-three stolen boards. *See id.*

District courts are vested with discretion to determine whether to conduct an evidentiary hearing on a disputed factual issue. Fed.R.Crim.P. 32(c)(3)(A) ("The court shall afford the defendant and the defendant's counsel an opportunity to comment on the [presentence] report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it."); *see United States v. Garcia,* 954 F.2d 12, 19 (1st Cir. 1992); *United States v. Gerante,* 891 F.2d 364, 367 (1st Cir.1989). Whether or not it determines that an evidentiary hearing is necessary, "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a), (policy statement ("p.s.")); *United States v. Zuleta–Alvarez,* 922 F.2d 33, 35–36 (1st Cir.1990) (interpreting U.S.S.G. § 6A1.3), *cert. denied,* —— U.S. ——, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991). Therefore, the court may consider reliable hearsay. U.S.S.G. § 6A1.3(a), p.s.; *id.* comment.; *United States v. Aymelek,* 926 F.2d 64, 68 (1st Cir.1991); *Gerante,* 891 F.2d at 367. Evidentiary hearings are not always necessary to demonstrate reliability of the evidence. Hearsay statements contained in presentence reports, affidavits, documentary exhibits, and submissions of counsel are often a reliable source of information to resolve a dispute. *See United States v. Shattuck,* 961 F.2d 1012, 1015 (1st Cir.1992); *see also United States v. Silverman,* 976 F.2d 1502, 1510–13 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993).

The defendant did not dispute that a DEC employee would testify to the statements mentioned in the presentence report concerning the source or value of the boards

---

**5.** After the defendant objected to the contents of paragraph 19 of the presentence report, the court stated "I'm going to allow paragraph 19 to remain intact. Because once again, it does not reveal that the boards in fact were stolen. So I don't see any impact on the defendant in that scenario." While the defendant believes that the court implicitly found that the boards were not stolen, the court was not precluded from later finding, on the basis of other information contained in the presentence report, that the boards were in fact stolen. It merely noted that paragraph 19 made no mention that the eighty-three boards were stolen. Paragraph 19 of the presentence report provides:

IRS Agents contacted DEC with the list of serial numbers of computer boards sold by Skrodzki to Marcantonio. After a thorough review of inventory records, DEC security determined that 112 of the boards including the 29 listed in the indictment should still be in DEC stockrooms. These stockrooms are not secure areas and Skrodzki had access to any equipment stored in the stockrooms. The computer boards are no larger than a 11 × 14 notebook and could easily be concealed in a briefcase. However, their retail value ranges from $1,350 to $18,970 apiece.

nor did he request an evidentiary hearing on his alleged greater access to the stockrooms or any other issue in dispute.[6] The defendant also has not asserted he was not provided with an adequate opportunity to comment on the presentence report and persuade the district court to follow his own version of the facts and recommendations. By expressly adopting the findings contained in the presentence report, the district court chose to credit the presentence report and the information contained therein as having sufficient indicia of reliability. *See United States v. Curran*, 967 F.2d 5, 6 (1st Cir.1992) (court correctly relied on $10,000 interest calculation mentioned in the presentence report); *United States v. Sherbak*, 950 F.2d 1095, 1099 (5th Cir.1992) (court expressly adopted facts set forth in the presentence report as to the amount of marijuana with which one of the defendants was involved, implicitly weighed the positions of the probation department and the defense, and chose to credit the probation department's facts); *see also United States v. Gracia*, 983 F.2d 625, 629 (5th Cir.1993) ("Presentence reports generally bear indicia of reliability sufficient to permit reliance thereon at sentencing."); *United States v. Robins*, 978 F.2d 881, 889 (5th Cir.1992) (District court may properly rely on "presentence report's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts."); *United States v. Wilkinson*, 926 F.2d 22, 29 (1st Cir.) ("[P]resentence reports are normally considered reliable sources of information, upon which sentencing courts may rely...."), *cert. denied*, —— U.S. ——, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991). The court relied on the statements contained in the presentence report to determine whether the government demonstrated by a preponderance of the evidence the eighty-three boards were stolen.[7] The presentence report mentioned several common factors that connect the twenty-nine boards the defendant knew were stolen and admitted transporting and the eighty-three boards the court included as relevant conduct. All 112 of the boards were taken from DEC's Westfield plant and the defendant had access to 'the stockrooms where they were stored. The defendant sold these same 112 boards to Marcantonio without providing him with any receipts or other documentation. In exchange for boards, Marcantonio wire-transferred over one million dollars to the defendant's United Cooperative and First Union bank accounts. When he was questioned by the IRS as to the source of the boards, the defendant explained that he had purchased them from an individual, Bill Harrison of Atlanta, Georgia, but was unable to provide the agents with Harrison's address or phone number, to produce any receipts, or otherwise to verify the purchases. The IRS agents attempted to verify the purchases but were unable to do so because none of the fifteen William Harrisons of Atlanta, Georgia, who were contacted had ever heard of the defendant. The defendant also told IRS agents that he had purchased boards from American Exchange of Worcester, Massachusetts. Once again, investigators were unable to verify the validity of the defendant's explanation because no such company exists in Worcester. Furthermore, during the time period that he sold boards to Marcantonio, the defendant admitted to structuring cash withdrawals so as to evade reporting requirements.

On the basis of the information contained in the presentence report, the court could have reasonably found the government proved by a preponderance of the evidence the eighty-three boards were stolen and the defendant engaged in the "same course of conduct or common scheme or plan as the offense of conviction." *See* U.S.S.G. § 1B1.3(a)(2). It properly included the boards as relevant conduct of interstate transportation of stolen property. The de-

---

**6.** At the hearing, defense counsel submitted that the defendant was prepared to testify that he did not have free access to the stockroom. However, no explicit request for an evidentiary hearing was made by counsel.

**7.** No remand is necessary to require the court pursuant to Fed.R.Crim.P. 32(c)(3)(D) to attach its findings as to disputed issues to the presentence report, *see United States v. Gerante*, 891 F.2d 364, 370 (1st Cir.1989), because the court, here, expressly adopted the facts as determined in the presentence report. *See United States v. Sherbak*, 950 F.2d 1095, 1099 (5th Cir.1992).

fendant has failed to establish that the district court's finding is clearly erroneous.

### B. Valuing the loss

■ The defendant next contends the district court improperly inflated the value of the victim's loss and imposed an illegal sentence. Because DEC does not sell used boards, the defendant asserts no fair market value exists for used boards and therefore the court should have employed the boards' cost of production to value DEC's loss. According to the defendant, if the court finds that a market value can be established to value DEC's loss, that market value should be based on the secondary market for used boards.

■ We review *de novo* the district court's interpretation and application of the Sentencing Guidelines. *United States v. Mullins*, 992 F.2d 1472, 1478–79 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2997, 125 L.Ed.2d 691 (1993); *United States v. St. Cyr*, 977 F.2d 698, 701 (1st Cir.1992). After we determine the Guideline's meaning and scope, we review the district court's factual findings underlying the sentence only for clear error. *Mullins*, 992 F.2d at 1479; *St. Cyr*, 977 F.2d at 701; *see also United States v. Pavao*, 948 F.2d 74, 77 (1st Cir.1991).

A product's fair market value ordinarily is the appropriate value of the victim's loss. U.S.S.G. § 2B1.1, comment. (n. 2); *see United States v. Colletti*, 984 F.2d 1339, 1345 (3d Cir.1992) (finding made pursuant to U.S.S.G. § 2B1.1 that stolen gems had an actual market value of $626,000 rather than a discounted value for which the retailer would sell them or the wholesale replacement cost of the gems not clearly erroneous); *see also United States v. Larracuente*, 952 F.2d 672, 674–75 (2d Cir.1992) (court correctly found pursuant to U.S.S.G. § 2B5.3 that value of high quality "bootlegged" videotapes was the same as the retail price of licensed copies). "The loss need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operation." U.S.S.G. § 2B1.1, comment. (n. 3); *see Mullins*, 992 F.2d at 1479 (citing U.S.S.G. § 2B1.1, comment. (n. 3)); *Pavao*, 948 F.2d at 77 (same). The defendant bears a heavy burden of demonstrating that the district court's finding is clearly erroneous in light of the Guideline's allowance that the loss need not be determined with precision.

The presentence report, the defendant's objection to the report, and the submissions of counsel provided the district court with the following information from which it could determine the value of the loss. Although it could not determine the number of boards that were used, DEC provided information as stated in the presentence report that the retail value of the 112 missing boards ranged between $1350 and $18,970 per board. DEC reported that the fair market value of the twenty-nine boards the defendant admitted he knew were stolen and transported was $278,800 and the value of the eighty-three boards considered as relevant conduct was $1,210,946. The defendant's bank statements also revealed that during the time he sold boards to Marcantonio, he received over one million dollars in payment. In his objection to the presentence report, the defendant supplied the court with information that Marcantonio sold used boards on the secondary market for between $5200 and $6500 per board. At the sentencing hearing, defendant's counsel proffered that the proper value of the boards was DEC's cost of production, approximately $600 per board, and the government conceded that a majority of the boards were used.

The district court had a broad range of values before it and made its determination on the basis of that information. While the district court did not set forth in great detail the method it used to calculate the loss, there was adequate evidence in the record for the court to determine that the value of the missing boards exceeded $800,000. *See Colletti*, 984 F.2d at 1345. The court did not need to value the boards precisely and could use the information before it to infer that the loss of the 112 boards exceeded $800,000. *See* U.S.S.G. § 2B1.1, comment. (n. 3). We cannot say that the district court's finding is clearly erroneous. For these reasons, the judgment of the district court is

*Affirmed.*