<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-1825

                         UNITED STATES,

                           Appellee,

                               v.

                ENRIQUE AUCH, a/k/a RICKIE AUCH,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

         [Hon. Richard G. Stearns, U.S. District Judge]

                      ____________________

                             Before

                     Selya, Circuit Judge,

                Kravitch, Senior Circuit Judge,

                   and Lipez, Circuit Judge.

                     _____________________

   Jennifer Petersen, with whom Karl R.D. Suchecki, and Petersen
& Suchecki were on brief, for appellant.
   Cynthia A. Young, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief, for
appellee.

                      ____________________

                         July 22, 1999
                      ____________________

 Kravitch, Senior Circuit Judge.  This appeal requires us
to address whether a prosecutor's various errors and acts of
misconduct throughout the course of a criminal trial require
reversal.  Although we find fault with a number of the prosecutor's
tactics in this case, we conclude that none of these errors
supports reversal under the applicable standards of review.  
Accordingly, we affirm.
                           BACKGROUND
 Enrique "Rickie" Auch stood trial for armed bank robbery
in violation of 18 U.S.C.  2113(a), robbery affecting commerce in
violation of the Hobbs Act, 18 U.S.C.  1951(a), and carrying a
firearm during and in relation to a crime of violence in violation
of 18 U.S.C.  924(c).  The evidence at trial showed that Auch had
participated in the robbery of an armored car delivering money to
the Fleet National Bank in Charlestown, Massachusetts (the
"Charlestown robbery").  James Tracy, another participant in the
Charlestown robbery, cooperated with the government and testified
against Auch at trial.  Tracy testified that Auch had stolen cars
to help facilitate the robbery and that, when one of the other
members of the group that had planned the robbery could not
participate, Auch agreed to replace him as the driver.  Tracy also
testified that he gave Auch an unloaded .357 revolver as the group
prepared to rob the armored car.  Tracy testified regarding the
events of the robbery, which lasted no more than 30 seconds and
netted $350,000.
 Steven Connolly also testified against Auch as a
government  witness.  Connolly had not participated in the
Charlestown robbery, but he agreed to permit the government to tape
a conversation between himself and Auch during which Auch bragged
about his participation.  The government introduced a recording of
the inculpatory conversation and a transcript of the relevant
portions at Auch's trial.  During trial, Auch's counsel questioned
the credibility of both Tracy and Connolly, suggesting that the
witnesses had an incentive to lie about Auch's involvement in the
Charlestown robbery to receive more favorable treatment from the
government on the various charges they faced.
 In the government's opening statement, the prosecutor
told the jury that they would hear testimony from Auch's friends,
i.e., the people with whom Auch had chosen to associate and work.  
Then, during the government's direct examinations of Tracy and
Connolly, the prosecutor repeatedly referred to a separate crime in
Hudson, New Hampshire, involving the murder of two persons during
the robbery of an armored car (the "Hudson robbery").  Tracy
admitted to having participated in that robbery, and the prosecutor
asked Connolly why the FBI had interviewed his girlfriend about the
Hudson robbery.  Despite Auch's repeated objections, which the
district court sustained, the prosecutor continued to ask questions
concerning the Hudson robbery and referred to the crime again
during closing argument.
 During closing and rebuttal arguments, the prosecutor
made a further series of questionable and troubling remarks.  
First, the prosecutor made various assertions in support of the
credibility of the government's witnesses.  The prosecutor asserted
that Tracy had no motive to lie, that Tracy knew that if he lied
"his life is done," and that Tracy had told the truth about Auch
and his own crimes, "like the honest man that he has been in this
court."  The prosecutor suggested that if Tracy had wanted to curry
favor with the government by testifying falsely against Auch that
he would have fabricated a stronger story against him.  Finally,
the prosecutor urged the members of the jury to convict Auch
because if they failed to do so Auch "would . . . laugh[] all the
way to the bank."
                           DISCUSSION
I.  References to Matters Not in Evidence
 Auch's first and most serious ground for appeal concerns
the prosecutor's repeated references to a separate crime--the
Hudson robbery--during the presentation of the government's
evidence.  Auch argues that the references to this independent
crime, in combination with the prosecutor's earlier statement that
Auch was friends with government witnesses, implicated Auch in the
violent and well-publicized Hudson robbery and unfairly prejudiced
the jury against him.
 Before we turn to the merits of Auch's argument, we must
decide the standard of review.  The government argues that we
should review Auch's claims for plain error because Auch failed to
object with specificity to the prosecutor's references to the
Hudson robbery at trial, while Auch argues that his objections were
sufficient to avoid plain error review.  In United States v.
Carrillo-Figueroa, 34 F.3d 33 (1st Cir. 1994), we explained that
"[u]nless the basis for objection is apparent from the context, the
grounds for objection must be specific so that the trial court may
have an opportunity to address the claim later sought to be
presented on appeal."  Id. at 39.  A review of the trial transcript
reveals that Auch repeatedly objected to the prosecutor's questions
regarding the Hudson robbery but never proffered specific grounds
for his objections.  Nevertheless, given the context of the issues
at stake during the trial and the complete irrelevance of the
Hudson robbery to the case against Auch, we conclude that the
grounds for Auch's objections were clear.  It is significant that
the district court felt no need to inquire as to the grounds for
Auch's objections before immediately sustaining them.
 The government, however, argues that Auch's objections to
the prosecutor's irrelevant questions cannot preserve the present
grounds for appeal--namely, prosecutorial misconduct.  See United
States v. Montas, 41 F.3d 775, 782-83 (1st Cir. 1994) (applying
plain error review when the grounds for the defendant's objections
varied from the issue on appeal).  We cannot agree.  The prosecutor
in this case continued to make improper references to the Hudson
robbery despite the district court's repeated decisions sustaining
Auch's continued objections.  Here the relevant exchanges
sufficiently alerted both the government and the district court to
the prosecutor's apparently willful misconduct in ignoring the
trial court's evidentiary rulings so as to preserve the issue of
prosecutorial misconduct for appeal.  See Carrillo-Figueroa, 34
F.3d at 39 (noting that context can make the grounds for objection
obvious); cf. United States v. Wilson, 149 F.3d 1298, 1301 & n.5
(11th Cir. 1998) (permitting full appellate review of defendant's
allegations of prosecutorial misconduct despite defendant's failure
to object to each relevant remark).  Accordingly, we afford Auch's
arguments on this issue full appellate review and will not apply
the plain error rule.
 We turn now to the merits of Auch's argument that the
prosecutor's repeated references to the Hudson robbery warrant the
reversal of his convictions.  The law is clear that a prosecutor's
reliance (or apparent reliance) upon matters not in evidence is
improper.  See United States v. Tajeddini, 996 F.2d 1278, 1284 (1st
Cir. 1993).  We do not consider the challenged comments in
isolation but within the broader context.  See United States v.
Seplveda, 15 F.3d 1161, 1187 (1st Cir. 1993).  In assessing a
defendant's allegation of prosecutorial misconduct we consider (1)
whether the prosecutor's misconduct was isolated and/or deliberate;
(2) whether the trial court gave a strong and explicit cautionary
instruction; and (3) whether any prejudice surviving the court's
instruction likely could have affected the outcome of the case.  
See United States v. Hodge-Balwing, 952 F.2d 607, 610 (1st Cir.
1991) (citing United States v. Capone, 683 F.2d 582, 586-87 (1st
Cir. 1982)).  In this case, the prosecutor's continued references
to the Hudson robbery over Auch's repeated and sustained
objections compel the conclusion that the prosecutor's comments
were part of a deliberate pattern.  The record also demonstrates
that the district court sustained Auch's objections to the
prosecutor's questions regarding the Hudson robbery and instructed
the prosecutor, in front of the jury, to stick to the case at hand.
 Finally, and most importantly, however, we cannot say
that the prosecutor's misguided tactic in this case could have
affected the outcome of the trial.  The evidence the government
adduced against Auch at trial overwhelmingly demonstrated his guilt
on the charges at hand.  Tracy testified at length and in detail
regarding Auch's participation in the robbery, and the government
bolstered his testimony with corroborating evidence.  Particularly
damning to Auch's case was the government's introduction of Auch's
tape-recorded statements, made to Connolly, boasting about his
participation as the "wheelman" in the Charlestown robbery.  In the
face of such evidence regarding Auch's participation in the
Charlestown robbery we cannot say that the prosecutor's conduct,
improper though it was, "so poisoned the well" to require reversal.  
Hodge-Balwing, 952 F.2d at 610 (internal quotation omitted).
II.  Auch's Remaining Contentions
 At oral argument, Auch conceded that he failed to
preserve the remaining issues for appeal by making contemporaneous
objections at trial.  Absent such objections, we review a
defendant's claims for plain error.  See United States v. Olano,
507 U.S. 725, 732-37, 113 S. Ct. 1770, 1776-79 (1993) (describing
the plain error standard); United States v. Wihbey, 75 F.3d 761,
770 & n.4 (1st Cir. 1996).  We will not reverse a conviction on
plain error review unless the error affects the substantial rights
of the defendant.  See Fed. R. Crim. P. 52(b).  We cannot find that
an error has affected the defendant's substantial rights unless it
is clear that the error affected the outcome of the proceedings.  
See Olano, 507 U.S. at 734, 113 S. Ct. at 1777-78.  Given our
conclusion above that the government's evidence against Auch was
overwhelming and even the prosecutor's serious error could not have
affected the outcome of the trial, Auch's remaining allegations of
error do not merit reversal under our more limited plain error
review.  Nevertheless, to the extent Auch has raised issues of
substance, we will catalog and discuss his claims to reemphasize
our teachings on these issues and to deter future prosecutorial
misconduct.  See generally United States v. Hasting, 461 U.S. 499,
506-07, 103 S. Ct. 1974, 1979 (1983) (prosecutorial misconduct that
does not affect the defendant's substantial rights may not permit
the guilty to go free simply to deter future misconduct).
 A.  Prosecutorial Vouching
 A prosecutor may not place "the prestige of the
government behind a witness by making personal assurances about the
witness'[s] credibility;" nor may the prosecutor indicate that
facts outside the jury's cognizance support the testimony of the
government's witnesses.  United States v. Neal, 36 F.3d 1190, 1207
(1st Cir. 1994).  Auch argues that the prosecutor engaged in
several instances of improper vouching during his closing argument,
particularly with reference to Tracy, the government's primary
witness.
 First, Auch correctly points out that the prosecutor
improperly injected his personal opinion of the evidence into his
closing argument.  See United States v. Smith, 982 F.2d 681, 684 &
n.2 (1st Cir. 1993) (prosecutor's use of "I think" during closing
argument was improper).  The prosecutor in this case told the jury
that "[t]he only way I can even imagine ever acquitting this man of
any of the charges is if you totally disbelieve Mr. Tracy as to
everything he said about Mr. Auch."  Although the prosecutor did
not use the prohibited "I think," language, the statement
nonetheless conveyed a personal opinion to the jury and, therefore,
was improper.
 Second, Auch argues that the prosecutor's statements that
Tracy had told the truth, that he had acted like an honest man, and
that Tracy's life would be over if he had lied during the trial,
constituted further illegal vouching.  To the extent that the
prosecutor's arguments referred to Tracy's motives to tell the
truth, the argument falls within the accepted bounds and was
entirely proper.  See United States v. Dockray, 943 F.2d 152, 156
(1st Cir. 1991); United States v. Martin, 815 F.2d 818, 821-23 (1st
Cir. 1987).  The prosecutor's introduction of Tracy's plea
agreement and his commentary on the dire consequences Tracy would
face if he committed perjury during Auch's trial, therefore, do not
constitute improper vouching.
 Beyond that, however, many of the prosecutor's remarks
may have crossed the line.  The government concedes that the
prosecutor's repeated statements to the effect that Tracy had acted
like an honest man and had testified truthfully at least entered a
gray area of impropriety.  See United States v. Innamorati, 996
F.2d 456, 483 (1st Cir. 1993) (noting a "hazy" line between
legitimate argument and improper vouching).  Although some of the
challenged statements fall into this gray area, assertions to the
effect that Tracy had told the truth run afoul of the long-standing
decisions of this court.  See Wihbey, 75 F.3d at 772 (prosecutor's
comment that government witness testified truthfully was improper);
United States v. Meja-Lozano, 829 F.2d 268, 273 (1st Cir. 1987)
(same).  We acknowledge that Auch's strategy at trial was to
characterize Tracy and Connolly as witnesses who had lied to curry
favor with the government and that the prosecutor's remarks came in
response to defense counsel's attempts to portray the government's
witnesses in the worst light.  See Meja-Lozano, 829 F.2d at 274
(giving the prosecutor "greater leeway" when improper vouching came
"in response to defense counsel's inflammatory statements").  
Nevertheless, "a trespass by the defense [does not] give[] the
prosecution a hunting license exempt from ethical restraints on
advocacy."  Capone, 683 F.2d at 586 (quoting Patriarca v. United
States, 402 F.2d 314, 321 (1st Cir. 1968)).
 Finally, Auch challenges the prosecutor's comments to the
effect that if Tracy was willing to lie about Auch's involvement in
the robbery to curry favor with the government, he would have
concocted a more damaging story.  We found this type of comment
to be beyond the bounds of proper argument in United States v.
Manning, 23 F.3d 570 (1st Cir. 1994).  In that case, the prosecutor
said that if the government's witness really wanted to lie, there
were "a million little ways they could have given it to the
Defendant" but argued that the government's witnesses could not lie
or exaggerate because they were bound by their oaths and the truth.
Id. at 572.  We held that this improper vouching, in combination
with a number of additional prosecutorial missteps during closing
arguments, required reversal.  Id. at 575.  We acknowledge that
Manning is distinguishable because the relatively sparse evidence
of the defendant's guilt on the charges at issue in Manning led us
to question whether the prosecutor's misconduct had swayed the
jury.  Nevertheless, we find the comments at issue in this case
indistinguishable from those in Manning in their impropriety, and
prosecutors in this circuit should consider themselves well advised
to strike such commentary from their repertoires.
 B. Extra-Judicial Consequences of the Verdict
 A prosecutor must refrain from attempting to deflect the
jury's attention from the narrow issue of the defendant's guilt or
innocence; any attempt to "foist onto the jury responsibility for
the extra-judicial consequences of a not-guilty verdict" is
improper.  United States v. Whiting, 28 F.3d 1296, 1302 (1st Cir.
1994).  Auch contends that the prosecutor committed such a
transgression by arguing that a not guilty verdict would result in
the biggest day of Auch's life and that he would laugh all the way
to the bank.
 The government candidly admits that the prosecutor did
not choose his words carefully in this portion of the closing
argument.  We find the prosecutor's lack of discretion particularly
troubling in this instance because the comments came towards the
end of the government's rebuttal and, as the last words that the
jury heard from the trial attorneys, had great potential to cause
prejudice.  See Manning, 23 F.3d at 575 (emphasizing the
significance of the timing of improper remarks to the jury).
 Nevertheless, the prosecutor's ill-advised rhetoric or
pained attempt at humor appears to have been relatively harmless in
this instance.  The majority of our cases that address a
prosecutor's references to the extra-judicial consequences of a
jury's verdict involve more sweeping arguments.  Typical examples
include a prosecutor's attempt to enlist the jurors in the war on
drugs, see Arrieta-Agressot v. United States, 3 F.3d 525, 527 (1st
Cir. 1993) ("[T]he defendants are not soldiers in the army of good.  
They are soldiers in the army of evil, in the army which only
purpose [sic] is to poison, to disrupt, to corrupt."), or a demand
that the jury prevent the defendant from harming other victims, see
Whiting, 28 F.3d at 1302 ("exhort[ing] . . .  the jurors not to
'let other kids be succored [sic] in by [the defendant's] flash,
that cash, that deception'").  In this case, the prosecutor's
remarks were confined to how Auch would react if the jury rendered
a verdict of not guilty.  Although the remarks may have been
calculated to "excite the jury, invite a partisan response, and
distract its attention from the only issue properly presented by
this case: whether the evidence established [Auch's] guilt beyond
a reasonable doubt," Arrieta-Agressot, 3 F.3d at 529-30, the
prosecutor's remarks were not as far afield as those requiring
reversal under the plain error standard.
                           CONCLUSION
 Although we find the prosecutor's various transgressions
and missteps in the conduct of this trial both disturbing and
exasperating, we discern no reversible error.  The evidence of
Auch's guilt on the charges is plain in the record and leads us to
conclude that none of the errors described above--whether
considered in isolation or in combination--could have had any
meaningful effect on the jury's ultimate verdict.  Accordingly, we
heed the Supreme Court's admonition against letting the guilty go
free to punish prosecutorial misconduct.  See United States v.
Hasting, 461 U.S. 499, 506-07, 103 S. Ct. 1974, 1979 (1983).
Prosecutors, however, also would do well to heed the Supreme
Court's warnings that our recourse is not limited to public hand-
wringing in the pages of the federal reporters.  In the appropriate
case, the courts will not hesitate to refer an offending prosecutor
to the Department of Justice for further investigation and
discipline.  Id. at 506 n.5, 103 S. Ct. at 1979 n.5. (describing
this and other options the courts may exercise in the face of a
prosecutor's unethical conduct).
 For the foregoing reasons, we AFFIRM.

</body>

</html>